UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------- x
DASHANTE SCOTT JONES,                                         :
                                                              :
                         Plaintiff,                           :
                                                              :    INITIAL REVIEW
            -against-                                         :    ORDER RE:
                                                              :    COMPLAINT
GONZALEZ, et al.,                                             :
                                                              :    24-CV-703 (VDO)
                         Defendants.                          :
------------------------------------------------------------- x
```

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Dashante Scott Jones, a sentenced inmate incarcerated at Corrigan Correctional Center in Uncasville, Connecticut, filed this case *pro se* pursuant to 42 U.S.C. § 1983 against four defendants: Officer Gonzalez, Officer Nordby, the Town of Newtown, and Warden Maldonado. Plaintiff alleges that Defendants have violated his rights under federal and state law. He seeks damages from Defendants in their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

I.   **FACTUAL BACKGROUND**

The incidents underlying this action occurred at Garner Correctional Institution. ECF No. 1 at 4. On October 30, 2023, Plaintiff was involved in a verbal argument with Officer Gonzalez after Plaintiff saw Officer Gonzalez engage in sexual activity with an inmate housed across from Plaintiff. *Id*. Plaintiff threatened to "write up" Officer Gonzalez and accused him of discriminating against "straight men and women." *Id.*

Officer Gonzalez threatened to spray Plaintiff with a chemical agent. *Id*. In response, Plaintiff told staff about Officer Gonzalez's recent actions and asked that a supervisor be called. *Id*. Officer Gonzalez then opened the safety trap in Plaintiff's cell door and sprayed him numerous times with a chemical agent. *Id*. at 4-5. Plaintiff advised Officer Gonzalez that he had asthma and could not be sprayed with a chemical agent, but Officer Gonzalez sprayed him anyway. *Id.* at 5. Plaintiff experienced difficulty breathing, coughing, sneezing, vomiting, and burning sensations on his face, penis and testicles. *Id*. Officer Gonzalez continued to use the chemical agent against Plaintiff, saying "Die" each time, until other officers made him stop and call a supervisor. *Id.* Following the incident, medical staff brought Plaintiff's asthma pump to treat his asthma attack. *Id*. at 6.

Officer Gonzalez issued Plaintiff a disciplinary report falsely stating that Plaintiff had assaulted him, even though Plaintiff was confined behind a closed door. *Id*. at 5-6. As a result of the disciplinary charge, Plaintiff lost commissary, phone, and tablet privileges. *Id.* at 6.

Officer Nordby, a disciplinary officer, spoke to Plaintiff about the disciplinary report. *Id*. Despite Plaintiff's protestations of innocence, Officer Nordby told Plaintiff that he would make sure Plaintiff was found guilty because Plaintiff had upset Officer Gonzalez. *Id.* Officer Nordby allegedly conceded that he had viewed video surveillance footage and knew that

2

Plaintiff did not assault Officer Gonzalez, but he would not give Plaintiff access to the footage and said he would make sure the charge stuck. *Id*. at 6-7.

Plaintiff filed an Inmate Request regarding the incident. *Id*. at 11. Officer Nordby ripped up the request and told Plaintiff that Warden Maldonado was not going to permit him to exhaust his administrative remedies because she knew he would file a lawsuit. *Id*. Warden Maldonado confirmed this in a conversation with Plaintiff. *Id.* at 9.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a government entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co*., 648 F.3d 98, 104 (2d Cir .2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*,

and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (per curiam) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g., Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Harden v. Doe*, No. 19-CV-3839(CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

### III.  <u>DISCUSSION</u>

Plaintiff asserts separate claims against each defendant: (1) Officer Gonzalez is named in federal claims for use of excessive force and retaliation and state law claims for defamation and libel; (2) Officer Nordby is named in a First Amendment retaliation claim and a Fourteenth Amendment claim for denial of procedural due process; (3) the Town of Newtown is named under a theory of municipal liability or supervisory liability for deliberate indifference to his

safety and conditions of confinement and for violation of the Protect Act; and (4) Warden Maldonado is sued under a theory of supervisory liability for failure to ensure safe conditions of confinement and protect Plaintiff from harm in violation of Plaintiff's rights under the Fourteenth Amendment and the Protect Act, for violation of his Fourteenth Amendment right to equal protection of the laws, and denial of access to the grievance process and, thereafter, to the courts.

### A.  Town of Newtown

Plaintiff contends that the Town of Newtown is liable for violations of his rights because Garner Correctional Institution is located there. However, Garner Correctional Institution is a state facility and the Department of Correction, which employs all of the other defendants, is a state agency. *See* www.portal.ct.gov/doc/history-department of-correction (last visited July 10, 2024); *see also Thomas v. Department of Correction*, No. 3:23-cv-1681(SVN), 2024 WL 1658460, at *3 (D. Conn. Apr. 17, 2014) (Department of Correction is a state agency). Thus, the remaining defendants are state, not municipal, employees. As the Town of Newtown is not involved in the administration of the prison, the Court concludes that there is no factual basis for a claim against the Town of Newtown. All claims against the Town of Newtown are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### B.  Retaliation

Plaintiff alleges that Officers Gonzalez and Nordby retaliation against him for threatening to report, and then reporting, Officer Gonzalez's sexual activity with another inmate.

To state a cognizable First Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against

the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019).

Filing a lawsuit is considered a protected activity. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (filing a lawsuit or grievance is constitutionally protected activity and will support a retaliation claim); *Stewart v. Ayala*, No. 3:20-CV-1938(CSH), 2022 WL 4356467, at *8 (D. Conn. Sept. 20, 2022) (protected speech or activity includes "filing a lawsuit, an administrative complaint, or a prison grievance").

Officer Nordby's actions took place after Plaintiff had filed his grievance. Thus, the grievance constitutes protected speech to support the claim against Officer Nordby. Although Plaintiff had not yet filed his grievance, he alleges that he had reported Officer Gonzalez's conduct to supervisors before Officer Gonzalez sprayed Plaintiff with the chemical agent. Although the Second Circuit has not yet articulated a bright line rule regarding when oral speech is considered constitutionally protected to support a retaliation claim, some district courts have found that verbal complaints may be considered protected speech. *See Mejia v. Kurtzenacker*, No. 3:21-CV-1222(MPS), 2022 WL 19331, at *4 (D. Conn. Jan. 3, 2022). Courts distinguish between complaints about the conduct of staff members or conditions of confinement, which are considered protected speech, and verbal arguments or confrontations between a prisoner and correctional staff, which are not. *Id.* (citation omitted). The Court considers Plaintiff's complaint about Officer Gonzalez's conduct sufficient to meet the first element of the retaliation claim against Officer Gonzalez on initial review.

The Second Circuit has defined adverse action as retaliatory conduct that would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020) (internal quotation marks and

6

citation omitted). The Second Circuit has held that "a prison official's repeated interference with an inmate's efforts to file grievances might necessitate efforts beyond what is reasonably expected of an inmate with ordinary firmness." *Id.* (internal quotation marks and citation omitted). Plaintiff alleges that Officer Nordby told him that he would not be permitted to file grievances and ripped one up in front of Plaintiff. He also stated that he would ensure that Plaintiff was found guilty of the disciplinary charge because Plaintiff had upset Officer Gonzalez. At this stage of proceedings, the Court considers the actions taken by Officer Nordby to plausibly allege adverse action. Plaintiff states that Officer Gonzalez sprayed him with excessive amounts of a chemical agent despite his protestations that he suffered from asthma and issued the allegedly false disciplinary report to justify his use of the chemical agent. Again, the Court considers these allegations to plausibly allege adverse action.

Finally, Plaintiff has alleged that both Officers took their actions immediately following his exercises of protected activity and Officer Nordby told him that his actions regarding the disciplinary report were taken because he had upset Officer Gonzalez by reporting his actions. Thus, Plaintiff also has met the third element.

Plaintiff's retaliation claims will proceed against Officers Gonzalez and Nordby. The supplemental state law claims for defamation and libel based on the allegedly false disciplinary report will proceed against Officer Gonzalez as well.

C. **Excessive Force**

To state a claim for use of excessive force in violation of the Eighth Amendment, Plaintiff must allege facts establishing subjective and objective components. *See Sims v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000). The objective component focuses on the harm done to the inmate in light of contemporary standards of decency. The amount of harm required depends

on the nature of the claim. *Id*. at 21, Although some degree of injury is usually required, the prisoner need not show that he suffered a significant injury to state a claim for use of excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) ("[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.") (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id*. at 37 (quoting *Hudson*, 503 U.S. at 9). The subjective component of the excessive force standard requires a showing that the use of force was "carried out 'maliciously and sadistically' rather than as a part of a 'good faith effort to maintain or restore discipline.'" *Id.* at 40 (quoting *Hudson*, 503 U.S. at 9).

The extent of an inmate's injuries is one factor the court may use to determine whether correctional staff could "plausibly" have considered the force necessary in a particular situation. *Hudson*, 503 U.S. at 7. Other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any effort made to temper the severity of a forceful response." *Id*. (internal quotation marks and citation omitted).

Plaintiff alleges that Officer Gonzalez sprayed him multiple times with the chemical agent while he was secured in his cell because Plaintiff had accused Officer Gonzalez of discrimination and threatened to report his sexual activity with another inmate. This allegation is sufficient to plausible allege that the force was used maliciously and not to maintain or restore discipline. The excessive force claim will proceed to service against Officer Gonzalez.

### D.      Procedural Due Process

Plaintiff alleges that Officer Nordby violated his Fourteenth Amendment right to procedural due process in connection with the disciplinary hearing. The standard analysis for a claim for violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). A prisoner is entitled to procedural due process in the context of prison disciplinary proceedings. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). However, because the prisoner's liberty interests have already been severely restricted because of his confinement, the prisoner must show that he was subjected to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life" to prevail on a procedural due process claim. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In addition, the prisoner must allege that he was deprived of adequate procedural safeguards at the hearing, which in the prison context include (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence is support of the defense, subject to the correctional institution's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. See *Wolff v. McDonnell*, 418 U.S. 539, 564-69 (1974).

Plaintiff alleges that he was denied the opportunity to present the video surveillance footage which would have shown the charge to be false. However, he has not alleged facts showing that he suffered an atypical and significant hardship as a result of the sanctions imposed at the hearing. Plaintiff alleges only that he lost commissary, telephone, and tablet privileges;

9

he was not sent to restrictive housing. These sanctions are not of constitutional magnitude and will not support a claim for denial of procedural due process. *See, e.g., Montalvo v. Lamy*, 139 F. Supp. 3d 597, 606 (W.D.N.Y. 2015) (prisoners have no constitutional right to access a commissary) (citing cases); *Griffin v. Cleaver*, No. 3:03-CV-1029(DJS), 2005 WL 1200532, at *6 (D. Conn. May 18, 2005) (as plaintiff had no constitutional right to telephone use, social visits, and commissary privileges, therefore such sanctions do not support a claim for denial of due process). Thus, Plaintiff cannot state a plausible Fourteenth Amendment claim for denial of procedural due process.

### E. False Accusation

Plaintiff contends that Officer Gonzalez issued a disciplinary report falsely accusing him of assault on an officer. When a false accusation is made in retaliation for the prisoner exercising his substantive constitutional rights, the false accusation rises to the level of a constitutional violation. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). In that case, however, the court considers the false accusation claims as subsumed in the retaliation claim. *See Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 279 (N.D.N.Y. 2018) (false accusation considered part of retaliation claim). As the Court has considered the allegedly false disciplinary report as part of the adverse action by Officer Gonzalez for Plaintiff's retaliation claim, there is not a separate false accusation claim.

### F. Supervisory Liability

Plaintiff asserts a claim for supervisory liability against Warden Maldonado. He contends that she should have ensured that he had constitutional conditions of confinement, *i.e.*, should have prevented Officer Gonzalez's actions, and also that she obstructed his access to administrative remedies. The second claim is considered in the following section.

10

For deliberate indifference claims against prison supervisors, here deliberate indifference to Plaintiff's conditions of confinement, the inmate "must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020). Plaintiff must plead and prove that Warden Maldonado, through her own individual actions, violated the Constitution. *See id*. at 618. Prior to *Tangreti*, a supervisory official could be found liable for failing to remedy a wrong after becoming aware it had occurred. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (listing five factors, of which this was the second, to establish supervisory liability). After *Tangreti*, however, this vehicle for establishing supervisory liability no longer is available. *See Stone #1 v. Annucci*, No. 20-CV-1326(RA), 2021 WL 4463033, at *8 (S.D.N.Y. Sept. 28, 2021) (noting district courts have rejected this *Colon* factor after *Tangreti*); *see also e.g., Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("After the fact notice of a violation of an inmate's rights is insufficient to establish a supervisor's liability for the violation). Here, Plaintiff does not allege that Warden Maldonado was aware of the incident with Officer Gonzalez when it occurred. Thus, he fails to allege a plausible claim against her for supervisory liability.

Plaintiff attempts to bolster his claim for supervisory liability by alleging that Warden Maldonado's failure to protect him from harm "is clear violation of ... the protect act and or state laws and or executive orders," citing "protect act/SB 1059 and executive order 21-1." ECF No. 1 at 9.

Executive Order 21-1 addresses the use of solitary confinement. *See* Conn. Exec. Order No. 21-1 § 6 (2021), portal.ct.gov/Office-of-the-Governor/Governors-Actions/Executive-Orders (last visited July 11, 2024). That is not an issue in this case. Further, nothing in Executive

11

Order 21-1 creates a private right of action. *See Quint v. Lamont*, No. 3:22-cv-1263(VAB), 2022 WL 17487978, at *3 (D. Conn. Dec. 6, 2022) (agreeing with another court in this district that there is no indication in Executive Order 21-1 that it creates a private right of action).

Public Act 22-18, which Plaintiff refers to as the "Protect Act" or SB 1059, purports to codify Executive Order 21-1. *See* www.portal.ct.gov/Office-of-the-Governor/News/Press-Releases/2022/05-2022/Governor-Lamont-Signs-Legislation-Limiting-the-Use-of-Isolated-Confinement (last visited July 11, 2024). However, Public Act 22-18 concerns the correctional advisory committee and the use of isolated confinement only. Thus, this act also is irrelevant to the issues in this case. Any claims for violation of Executive Order 21-1 or Public Act 22-18 are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### G. Access to the Grievance Process and the Courts

Plaintiff contends that Warden Maldonado denied his right to utilize the grievance procedures and also denied his First Amendment right of access to the courts because he cannot file a federal lawsuit without first exhausting his administrative remedies.

"Prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials." *Abrams v. Erfe*, No. 3:17-CV-1570(CSH), 2018 WL 691714, at *16 (D. Conn. Feb. 2, 2018) (citation omitted). The Supreme Court has never held, however, that the Constitution requires state prisons to have formal grievance procedures. In *Riddick v. Semple*, 731 F. App'x 11 (2d Cir. 2018) (summary order), the Second Circuit rejected a state prisoner's constitutional claim regarding prison grievance procedures. The court noted that the prisoner's "claim that defendants violated his due process rights by restricting his access to the prison's grievance procedures confuses a state-created procedural entitlement with a constitutional right. However, neither state policies nor state

12

statutes create federally protected due process entitlements to specific state-mandated procedures." *Id.* at 13 (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (internal quotation marks and ellipsis omitted)); *see also, e.g., Schlosser v. Manuel*, No. 3:19-cv-1444(SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) ("Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed." (citing cases)).

As there is no constitutional right to prison grievance procedures, Plaintiff fails to allege a plausible constitutional claim for denial of access to those procedures or for denial of access to the courts based on the alleged interference with his access to those procedures. *See Lopez v. McGill*, No. 3:08-CV-1931(CSH), 2009 WL 179787, at *6 (D. Conn. Jan. 21, 2009) ("plaintiff's claim that the grievance restriction directly limits his First Amendment right to petition the government for redress of grievances fails as a matter of law").

Further, a denial of access to prison grievance procedures does not affect Plaintiff's access to the federal courts. Under the Prison Litigation Reform Act ("PLRA"), Plaintiff is required to exhaust available administrative remedies before filing a federal lawsuit regarding prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court has identified three circumstances where a court could find that administrative remedies were not available to a prisoner under the PLRA. One such circumstance is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. If, as Plaintiff alleges, Warden Maldonado thwarted his efforts to

13

exhaust his administrative remedies by refusing to process his grievances, he could argue that administrative remedies were not available to him should Defendants move to dismiss his claims on exhaustion grounds.

Thus, Plaintiff's claims for denial of access to the grievance procedures and the courts are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### H.     Equal Protection

Plaintiff generally alleges that Defendants violated his right to equal protection of the laws. "[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injure a person.'" *Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980) (emphasis omitted)). Equal protection does not mandate identical treatment for each individual, but rather requires that similarly situated persons be treated the same. *See Muhmmaud v. Murphy*, 632 F. Supp. 2d 171, 178 (D. Conn. 2009). Thus, to state a traditional equal protection claim, Plaintiff must allege facts showing that he was treated differently from other similarly situated inmates and that the different treatment was based on one of these reasons. *See Nicholson v. Hannah*, No. 3:20-cv-209(JAM), 2020 WL 3086022, at *5 (D. Conn. June 10, 2020) (citation omitted).

Plaintiff does not identify any other inmate experiencing the same conditions who was treated differently. Instead, he alleges that as a non-supervisory officer, Officer Gonzalez should not have been carrying a chemical agent. Whether Officer Gonzalez was properly in possession of the chemical agent does not show that other inmates who inserted themselves into

14

incidents that did not involve them and threatened to report allegedly improper conduct by a correctional officer were not sprayed with a chemical agent or subjected to other actions by the officer. Thus, there is no basis for an equal protection claim. Any equal protection claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1). The Court notes that Plaintiff repeatedly asserts unsupported equal protection claims that have been dismissed for this reason. *See, e.g., Jones v. Blekis*, No. 3:23-CV-1461(VDO), 2024 WL 230288, at *5 (D. Conn. Jan. 22, 2024); *Jones v. Baran*, No. 3:23-CV-1039)VDO), 2023 WL 8004702, at *4 (D. Conn. Nov. 17, 2023); *Jones v. Shortman*, No. 3:22-CV-1512(SVN), 2023 WL 4157339, at *4 (D. Conn. June 23, 2023); *Jones v. Rodi*, No. 3:19-cv-1866(VAB), 2020 WL 1820816, at *9 (D. Conn. July 30, 2020).

### I. **Official Capacity Damages Claims**

Plaintiff states that he seeks damages from Defendants in their individual and official capacities. As the remaining Defendants are state employees, the Eleventh Amendment bars the recovery of damages against them in their official capacities. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). All claims against Defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### IV. **CONCLUSION**

All claims against Defendants Town of Newtown and Warden Maldonado, the Fourteenth Amendment claims for denial of due process and denial of equal protection of the laws, and all claims for damages from the remaining Defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b). The Court does not afford Plaintiff the opportunity to file an amended complaint to reallege these claims as it had determined that there are no possible factual allegations against Defendants that would permit these claims to proceed.

The case will proceed on the Eighth Amendment claim against Officer Gonzalez for use of excessive force, and the First Amendment retaliation claims against Officers Gonzalez and Nordby, which includes the claim against Officer Gonzalez for false accusation, in their individual capacities only. The supplemental state law claims against Defendant Gonzalez for defamation and libel based on the false disciplinary report also will proceed.

The Court enters the following additional orders.

(1)     **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain a current service address for Defendants Gonzalez and Nordby, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)     **The Clerk shall** send Plaintiff a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need

not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write **PLEASE NOTE MY NEW ADDRESS** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or the attorney for Defendants of his new address.

(9) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

(10) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Plaintiff.

**SO ORDERED.**

Hartford, Connecticut
July 16, 2024

                                          /s/Vernon D. Oliver
                                        VERNON D. OLIVER
                                        United States District Judge